Filed 1/16/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Israel O., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>Israel O.,<br><br>　　　　Defendant and Appellant. | A142080<br><br>(Alameda County<br>Super. Ct. No. SJ13022021-01) |

Israel O. was born in Mexico and is not a United States citizen. He was adjudged a ward of the juvenile court as a result of admitting a misdemeanor violation of Penal Code section 496, subdivision (a). Israel requested that the court make the factual findings that would qualify him for special immigrant juvenile (SIJ) status under federal law (8 U.S.C. § 1101(a)(27)(J); hereafter section 1101(a)(27)(J) or the SIJ statute). Such findings are a prerequisite for filing an SIJ status application with the United States Citizenship and Immigration Services (USCIS) of the Department of Homeland Security (see 8 C.F.R. § 204.11(d)), which would allow Israel an opportunity to pursue regularization of his immigration status in the United States. The juvenile court declined to make the requested SIJ status findings. The sole issue on appeal is whether the juvenile court erred in its interpretation of the SIJ statute.[1] We find that it did and remand for further proceedings.

---

[1] Pursuant to California Rules of Court, rule 8.200(c), nonprofit groups Legal Services for Children and Immigrant Legal Resource Center have requested leave to

1

A.    *The SIJ Statute*

"The Immigration Act of 1990, codified at [title 8 United States Code] section 1101, sets forth a procedure for classification of certain aliens as special immigrants who have been declared dependent 'on a juvenile court.' " (*B.F. v. Superior Court* (2012) 207 Cal.App.4th 621, 626.) "Congress created this classification to protect abused, neglected, and abandoned unaccompanied minors through a process that allows them to become permanent legal residents. [Citation.] . . . A minor who obtains SIJ status may become a naturalized United States citizen after five years. [Citation.]" (*In re Y.M.* (2012) 207 Cal.App.4th 892, 915; see 8 U.S.C. § 1427(a).)

In 1997, as a result of congressional concern "that visiting students were abusing the SIJ process, and amended the SIJ statute to 'limit the beneficiaries of this provision to those juveniles for whom it was created, namely abandoned, neglected, or abused children . . . .' [Citation.]" (*Perez-Olano v. Gonzalez* (C.D.Cal. 2008) 248 F.R.D. 248, 265, fn 10.) That amendment required a state court determine whether a minor seeking SIJ status was (1) eligible for long-term foster care due to abuse, neglect, or abandonment and (2) a dependent of a juvenile court or committed or placed with a state agency. (See *Eddie E. v. Superior Court* (2013) 223 Cal.App.4th 622, 626–627.) At issue here is an amendment to the SIJ statute under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) (Pub.L. No. 110-457, § 235(d)(1) (Dec. 23, 2008), 122 Stat. 5044, 5079). TVPRA replaced the requirement of long-term foster care eligibility with a requirement that reunification with "1 or both" parents not be viable due to abuse, neglect, abandonment. TVPRA also made minors who had been placed in the custody of an individual or entity appointed by a state court eligible for SIJ status. (*Eddie E.,* at p. 627.)[2] " 'As a result of the removal of the foster care requirement,

_____

appear as amici curiae in support of Israel. On December 23, 2014, we granted the request and accepted their joint brief for filing.

[2] Section 1101(a)(27) currently provides in relevant part: "The term 'special immigrant' means—[¶] . . . [¶] (J) an immigrant who is present in the United States—[¶]

state courts may now make SIJ [status] findings whenever jurisdiction can be exercised under state law to make care and custody determinations, and are no longer confined to child protection proceedings alone.' [Citation.]" (*Leslie H. v. Superior Court* (2014) 224 Cal.App.4th 340, 349 (*Leslie H.*).)

" 'While the federal government has exclusive jurisdiction with respect to immigration [citations] . . . , state juvenile courts play an important and indispensable role in the SIJ application process.' [Citation.] Under section 1101(a)(27)(J) and its implementing regulations codified at 8 Code of Federal Regulations part 204.11 . . . , 'state juvenile courts are charged with making a preliminary determination of the child's dependency and his or her best interests, which is a prerequisite to an application to adjust status as a special immigrant juvenile. "The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests" [citations].' [Citation.]" (*Leslie H., supra,* 224 Cal.App.4th at p. 348, quoting *In re Mario S.* (N.Y.Fam.Ct. 2012) 954 N.Y.S.2d 843, 849 (*Mario S.*).)

The predicate state trial court findings now required under the SIJ statute, as revised by TVPRA, are that (1) the minor is "dependent" upon a juvenile court or "committed to, or placed under the custody of," a state entity or other court-appointed individual or entity; (2) the minor cannot be reunified with one or both parents "due to abuse, neglect, abandonment or a similar basis found under State law," and (3) it is not in the minor's "best interest" to be "returned" to his or her country of origin.

---

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with *1 or both of the immigrant's parents* is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; [¶] (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and [¶] (iii) in whose case the Secretary of Homeland Security consents to the grant of [SIJ] status . . . ." (Italics added.)

3

(§ 1101(a)(27)(J); see also 8 C.F.R. § 204.11(c).)  A superior court with jurisdiction to make child custody determinations under California law "has the authority and duty to make [SIJ status] findings" if the evidence before it supports those findings.  (*B.F. v. Superior Court, supra*, 207 Cal.App.4th at p. 630; Code Civ. Proc., § 155, subds. (a), (b)(1).)[3]  After a state court makes SIJ status findings, the minor must include that order in his or her SIJ petition to the Department of Homeland Security.  (See 8 U.S.C. § 1101(a)(27)(J)(iii); 8 C.F.R. § 204.11(d).)

B.      *Procedural History*

1.      *In the Trial Court*

Pursuant to a plea agreement, Israel admitted a misdemeanor violation of receiving stolen property (Pen. Code, § 496, subd. (a)).  The underlying facts are not relevant to the narrow issue of law before us.[4]  At the February 14, 2014 disposition hearing, the court declared wardship and returned Israel to his mother's home, subject to conditions of probation.  At the time of disposition, Israel requested that the court make SIJ status findings.  In a declaration submitted with his request, Israel stated that he was born in Mexico in 1999, came to the United States in 2005 with his older brother, and lived in Alameda County with his mother.  He also asserted that he had no memory of his father,

---

[3] Code of Civil Procedure section 155 was enacted by Senate Bill No. 873 (2013-2014 Reg. Sess.) and took effect immediately on September 27, 2014.  The statute explicitly provides that the superior court (including juvenile, probate, or family court divisions) has jurisdiction to make judicial determinations regarding the custody and care of juveniles within the meaning of the Immigration and Nationality Act, and it eliminates any ambiguity regarding the jurisdiction of California courts to make factual findings that, if supported by evidence, would enable an immigrant minor to petition USCIS for SIJ status.  (Code Civ. Proc., § 155, subds. (a), (b).)  Trial court findings under the SIJ statute must be incorporated into Judicial Council Forms, form JV-224 ("Order Regarding Eligibility for Special Immigrant Juvenile Status").  (See Code Civ. Proc., § 155, subd. (e).)

[4] The People's brief on appeal recited details of the offenses underlying the operative delinquency petition, as well as other information regarding Israel's delinquency history, including a subsequent delinquency petition.  We agree with Israel that none of those facts are material to the single issue that we must decide and are not considered here.

4

who continued to live in Mexico; he had only very limited telephone contact with his father; his family had not received any physical or emotional support from his father; and his care in Mexico before coming to the United States had been provided by a grandmother who passed away in January 2014. Israel said he would have no place to live if he were returned to Mexico and his father would not provide for him. The court requested additional briefing, focused on questions not at issue here.

At a hearing on May 12, 2014, the trial court considered the briefing submitted and the argument of counsel.[5] The court found that Israel's father, who remained in Mexico, had abandoned him. However, relying largely on a decision of the Nebraska Supreme Court (*In re Erick M.* (Neb. 2012) 820 N.W.2d 639 (*Erick M.*)), the trial court interpreted the "1 or both" language of section 1101(a)(27)(J) as prohibiting SIJ status findings if return to *a* custodial parent remained feasible.

2. *On Appeal*

Israel and amici curiae argue that section 1101(a)(27)(J) provides for SIJ status findings if reunification with *either* parent is not viable due to abuse, neglect or abandonment. The parties agree that no reported California decision has yet addressed this issue.

The People initially argued in support of the trial court's statutory interpretation, contending that section 1101(a)(27)(J) was ambiguous (as the Nebraska Supreme Court found in *Erick M.*), and that the legislative history failed to support Israel's contention that inability to reunify with either parent would trigger SIJ status eligibility. However, by letter to this court, dated December 22, 2014, the People withdrew their argument, citing, among other things, materials posted on the USCIS Web site stating that residence in the United States with a nonabusive parent would not disqualify a minor from SIJ status consideration. The People now take the position that it would be inappropriate for "a state attorney general to urge an interpretation of federal immigration policy in a

---

[5] The district attorney took no position on Israel's request for SIJ status findings.

5

manner that would contradict with information provided by the federal agency tasked with enforcing such policy."

In response to the People's letter, Israel moved on December 23, 2014, for summary reversal.  Although this court has the power to entertain a motion for reversal in an appropriate case (*People v. Browning* (1978) 79 Cal.App.3d 320, 323–324), we did not find this to be such a case and denied the motion.  As discussed *post*, the trial court's interpretation of the SIJ statute was not patently unreasonable in the first instance and summary reversal would have abdicated our responsibility to provide de novo analysis of what appears to be a potentially significant and recurring issue of first impression.[6]

## II.    DISCUSSION

We deal only with a question of proper interpretation of the current SIJ statute, specifically the meaning of the statute's "1 or both" language.  Where the question presented is one of statutory interpretation on undisputed facts, our review is de novo. (*Shirey v. Los Angeles County Civil Service Com.* (2013) 216 Cal.App.4th 1, 7.)

"A reviewing court's fundamental task in construing a statute is to determine the intent of the lawmakers so as to effectuate the purpose of the statute.  Courts begin this task by scrutinizing the actual words of the statute, giving them their usual, ordinary meaning.  [Citations.]  When statutory language is clear and unambiguous (i.e., susceptible to only one reasonable construction), courts adopt the literal meaning of that language, unless that literal construction would frustrate the purpose of the statute or produce absurd consequences.  In contrast, when the statutory language is ambiguous, courts must select the construction that comports most closely with the apparent intent of

---

[6] Israel also sought expedited consideration and immediate issuance of the remittitur because his next juvenile court hearing is set for March 4, 2015, and if he is dismissed from probation the Department of Homeland Security would no longer have jurisdiction to consider an application for SIJ status.  (See 8 C.F.R. §204.11(c)(5).)  As noted in our January 12, 2015 order, immediate remittitur may issue only on stipulation of the parties (Cal. Rules of Court, rule 8.272(c)(1)); however, we granted Israel's request for expedited review given that he has demonstrated some urgency for resolution of this appeal.

6

the Legislature, with a view to promoting rather than defeating the general purpose of the statute. [Citation.] In short, courts adopt 'the construction that best effectuates the purpose of the law.' [Citation.]" (*Consolidated Irrigation Dist. v. Superior Court* (2012) 205 Cal.App.4th 697, 715–716.)

Israel and amici curiae argue that use of the disjunctive " '1 *or* both' " in the statute is an express and unambiguous reflection of congressional intent that a minor only need to show that reunification is not viable with one parent as a result of abuse, abandonment or neglect at the hands of that parent. "If the intent of Congress is clear, that is the end of the matter . . . ." (*Chevron U. S. A. v. Natural Res. Def. Council* (1984) 467 U.S. 837, 842–843, fn. omitted (*Chevron*); *Leslie H., supra,* 224 Cal.App.4th at pp. 347–348.) As we have noted, no California authority has construed this provision of the SIJ statute, and the few published decisions from other jurisdictions are in conflict.

In *Erick M.*, the Nebraska court recognized that "the '1 or both' parents rule is consistent with Congress' intent to expand the pool of potential applicants," but found that Congress intended that SIJ status be available to only those juveniles who are seeking relief from parental abuse, neglect, or abandonment, not those seeking immigration advantage. (*Erick M.*, *supra*, 820 N.W.2d at p. 647.) The court consequently held that "where a juvenile lives with only one parent when a juvenile court enters a guardianship or dependency order, the reunification component under § 1101(a)(27)(J) is not satisfied if a petitioner fails to show that it is not feasible to return the juvenile to the parent who had custody. This is true without any consideration of whether reunification with the absent parent is feasible because the juvenile has a safe parent to whose custody a court can return the juvenile." (*Erick M.*, at p. 647.)

At least one intermediate appellate court adopted *Erick M.*'s interpretation of the SIJ statute, agreeing that the "1 or both" language requires a finding that reunification with neither parent is viable. (*H.S.P. v. J.K.* (N.J.Ct.App. 2014) 87 A.3d 255, 268.) That court found the legislative and administrative history showed "two competing goals": on one hand, "Congress wanted to permit use of the SIJ procedure when necessary to prevent the return of juveniles to unsafe parents"; on the other hand, "[w]here such

7

protection is unnecessary, Congress wanted to prevent misuse of the SIJ statute for immigration advantage." (*Ibid.*) The New Jersey Supreme Court has since granted a petition for review in that matter. (*H.S.P. v. J.K.* (N.J. 2014) 95 A.3d 258.)

Several New York courts have disagreed with the *Erick M.* analysis. In *Mario S., supra,* 954 N.Y.S.2d 843, the court held that "[a]lthough [the minor] was able to be returned to the custody of his mother . . . [t]he fact that [he] was returned to the care of his mother should not be determinative of his application for SIJ [status] findings." (*Id.* at p. 851.) In rejecting *Erick M.*'s interpretation of the SIJ statute, the *Mario S.* court found that "[n]othing in 8 U.S.C. § 1101(a)(27)(J) or the regulation indicates that the Congress intended that state juvenile courts pre-screen potential SIJ applications for possible abuse on behalf of the USCIS." (*Id.* at p. 853; accord, *In re Marcelina M.-G.* (N.Y.App.Div. 2013) 973 N.Y.S.2d 714, 722 (*Marcelina M.-G.*) [interpreting the plain language of the "the '1 or both' language to provide [SIJ status] eligibility where reunification with just one parent is not viable as a result of abuse, neglect abandonment, or a similar State law basis"]; *Diaz v. Munoz* (N.Y.App.Div. 2014) 989 N.Y.S.2d 52, 54; *In re Gabriel H.M.* (N.Y.App.Div. 2014) 984 N.Y.S.2d 96, 98.)

We agree with the view of the Nebraska Supreme Court that the reference to "1 or both" parents in section 1101(a)(27)(J) is ambiguous—i.e., the statute is susceptible to more than one reasonable interpretation. (*Erick M.*, *supra,* 820 N.W.2d at p. 644.) Because "or" describes what a juvenile court must determine in the alternative, it could be read as Israel urges, or alternatively to require that depending on the circumstances *either* reunification with one parent is not feasible *or* reunification with both parents is not feasible. (*Id.* at pp. 644, 648.) But we depart from that court's view to the extent that it appears to contemplate a state court role, through the SIJ statute, in effectuating federal immigration policy. "A state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country. As *Mario S.* aptly observed, the SIJ statute and accompanying regulations 'commit . . . specific and limited issues to state juvenile courts.

8

The juvenile court need not determine any other issues, such as what the motivation of the juvenile in making application for the required findings might be [citations]; whether allowing a particular child to remain in the United States might someday pose some unknown threat to public safety [citation]; and whether the USCIS, the federal administrative agency charged with enforcing the immigration laws, may or may not grant a particular application for adjustment of status as a SIJ.' (*Mario S., supra,* 954 N.Y.S.2d at pp. 852–853[, fn. omitted].)" (*Leslie H., supra,* 224 Cal.App.4th at p. 351.)

The parties here appear to agree that there is no specific legislative history relating to the "1 or both" language of the SIJ statute from which we may divine congressional intent.[7] At least none has been presented to us. The *Erick M.* court, at the time of its decision, found no regulatory interpretation of the statute, and rendered its decision "absent any statutory or regulatory guidance." (*Erick M., supra,* 820 N.W.2d at p. 644.) Here, in contrast, our attention is directed by all parties, including the People, to several agency sources interpreting and applying section 1101(a)(27)(J) in a contrary fashion.[8] While the judiciary is the final authority on issues of statutory construction and must reject administrative constructions contrary to clear congressional intent, "considerable weight [is] accorded to an executive department's construction of a statutory scheme it is entrusted to administer" (*Chevron, supra*, 467 U.S. at p. 844, fn. omitted). (*Id.* at pp. 842–845; *American Meat Inst. v. Leeman* (2009) 180 Cal.App.4th 728, 751.) The

---

[7] "The shift in language from the regulatory term 'family reunification' to the current statutory term 'reunification with [one] or both parents' was accomplished without a trace of legislative history." (3 Gordon et al., Immigration Law and Procedure (2014) § 35.09[3][a], fn. omitted [Lexis, 3-35 Immigration Law and Procedure § 35.09].)

[8] The documents referenced by the parties are not part of the trial court record. However, those materials are posted as reference sources on the official Web sites of the responsible federal agencies, and both sides agree as to their content. We therefore take judicial notice of the existence and content of the cited documents. (Evid. Code, § 452, subd. (h) ["facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"]; cf. *Conlan v. Shewry* (2005) 131 Cal.App.4th 1354, 1364 & fn.5.)

9

agency sources cited here, however, are not contained in formal regulations, and are not otherwise the product of a formal rule-making and notice and comment process.[9] They are therefore not accorded the same "*Chevron*-style deference," but are nevertheless " 'entitled to respect' . . . but only to the extent that those interpretations have the 'power to persuade,' [citation]. [Citation.]" (*Christensen v. Harris County* (2000) 529 U.S. 576, 587.)

As conceded by the People in withdrawal of their original arguments, there appears little doubt that USCIS currently interprets and applies section 1101(a)(27)(J) to include, as "SIJ eligible children" those who may be living in this country "with a foster family, an appointed guardian, *or the non-abusive parent*" (italics added).[10] *Marcelina M.-G., supra*, 973 N.Y.S.2d at page 724, referenced USCIS approval of SIJ status applications where reunification with one parent was viable, and amici curiae have submitted examples of decisions by USCIS's Administrative Appeals Office (AAO)[11] and the Executive Office for Immigration Review of the Department of Justice that are consistent with SIJ status eligibility for minors living with a nonabusive parent in the United States. The Executive Office for Immigration Review has also taken the position that "Prior to the TVPRA amendments, SIJ classification required a State court finding

---

[9] "Apart from nonsubstantive changes in 2009 (see 74 Fed.Reg. 26937 (June 5, 2009)), [the SIJ] regulations were last updated in 1993 and therefore have not 'kept pace' with intervening Congressional amendments. [Citaton.]" (*Leslie H., supra,* 224 Cal.App.4th at p. 348; see 8 C.F.R. § 204.11.) Proposed rules for SIJ petitions were posted for comment in 2011 (76 Fed.Reg. 54978-01 (Sept. 6, 2011)), but apparently have yet to be adopted. The proposed rules mirror the "1 or both" parent language, without additional discussion or explanation.

[10] United States Citizenship and Immigration Services, *Immigration Relief for Abused Children: Information for Juvenile Court Judges, Child Welfare Workers, and Others Working With Abused Children* (April 2014) <http://www.uscis.gov/sites/default/files/USCIS/Green%20Card/Green%20Card%20Through%20a%20Job/Immigration_Relief_for_Abused_Children-FINAL.pdf> (as of Jan. 16, 2015).

[11] AAO reviews SIJ proceedings de novo. (See 5 U.S.C. § 557(b) ["[o]n appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule"].)

that the child was eligible for long-term foster care, which effectively meant that reunification was not viable with either parent. *Under the current version of the statute, because it is only reunification with one parent that must be not viable, the alien child could potentially be living with one parent and still qualify for SIJ status*. [Citation]"[12] While the *Erick M.* court contended that USCIS, in practice, normally required a petitioner to prove reunification with both parents was not feasible, its cited example was a nonprecedential AAO case that seems only to exemplify that SIJ status can be revoked by USCIS where a request for SIJ classification was not bona fide (e.g., a juvenile court dependency order had been sought primarily for purpose of obtaining an immigration benefit rather than for the purpose of relief from abuse, neglect or abandonment).[13] (*Erick M., supra,* 820 N.W.2d at p. 647.)

Where a statute is "silent or ambiguous with respect to [a] specific issue," we consider whether a responsible "agency's answer is based on a permissible construction of the statute." (*Chevron, supra*, 467 U.S. at p. 843, fn. omitted.) Even absent formal regulatory action by USCIS, we find the interpretation of the SIJ statute adopted by the agency and Department of Justice to be persuasive and entirely consistent with the purpose of SIJ status to " 'protect the applicant from further abuse or maltreatment by preventing him or her from being returned to a place where he or she is likely to suffer further abuse or neglect' [Citation.]" (*Marcelina M.-G., supra,* 973 N.Y.S.2d at p. 724.) The alternative suggested by *Erick M.* would mean that a juvenile with a safe and suitable home in the United States would face the prospect of deportation to the place where he or she may have experienced the abuse, neglect or abandonment that rendered reunification with the nonresident parent infeasible in the first place. We therefore conclude that an eligible minor under section 1101(a)(27)(J) includes a juvenile for whom a safe and

---

[12] Ploeg, *Special Immigrant Juveniles: All the Special Rules* (2014) vol. 8, No. 1, Immigr. L.Advisor 1, 4 <http://www.justice.gov/eoir/vll/ILA-Newsleter/ILA%202014/vol8no1.pdf> (as of Jan. 16, 2015), italics added.

[13] See *In Re* [*Redacted*] (U.S. Dept. of Homeland Security, Citizenship and Immigration Serv., Oct. 30, 2009, No. [*Redacted*]) 2009 WL 6521113.

suitable parental home is available in the United States and reunification with a parent in his or her country of origin is not viable due to abuse, neglect or abandonment.

The juvenile court has already determined Israel to be a ward of the court and has found that reunification with his father in Mexico is not viable due to abandonment. Given its view of the scope of the SIJ statute, the juvenile court did not address the question of whether a return to his home country was in Israel's best interest. (8 U.S.C. § 1101(a)(27)(J)(ii).) Although nothing in this record indicates that care and support is available for Israel in Mexico, a finding on this issue is best made by the juvenile court in the first instance.

### III.  DISPOSITION

We reverse the juvenile court's order denying Israel's request for SIJ status findings and remand for a hearing as soon as practicable to determine whether it is in Israel's best interest to be returned to Mexico. If the juvenile court finds that it is not in Israel's best interest to be returned to Mexico, the court shall complete Judicial Council Forms, form JV-224, as required by Code of Civil Procedure section 155, subdivision (b).

_____
BRUINIERS, J.

WE CONCUR:


_____
JONES, P. J.


_____
NEEDHAM, J.


A142080

Superior Court of Alameda County, No. SJ13022021-01, Armando G. Cuellar, Jr., Judge.

Brendon D. Woods, Public Defender for Alameda County and Raha Jorjani, Immigration Defense Attorney, for Defendant and Appellant.

Paul Hastings and C. Yewleh Chee for Legal Services for Children and Immigrant Legal Resource Center as Amici Curiae on behalf of Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Eric D. Share and Jeffrey M. Bryant, Deputy Attorneys General, for Plaintiff and Respondent.