Filed 4/27/26  Bagish v. Sarraf CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| ALAN BAGISH, | B344027 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24STCV25438) |
| v. | |
| VATCHE SARRAF, | |
| Defendant and Appellant, | |

APPEAL from order of the Superior Court of the County of Los Angeles, Dean J. Kitchens, Judge.  Affirmed.

The Bearman Firm and Ethan Bearman for Defendant and Appellant.

Utzurrum Law Offices and Joe Utzurrum for Plaintiff and Respondent.

Alan Bagish was arrested after his neighbor, Vatche Sarraf, reported to law enforcement that Bagish threatened to "slash" him. Bagish, alleging the report was false, sued Sarraf for defamation and emotional distress. Sarraf appeals from the trial court's order granting in part and denying in part his special motion to strike four of Bagish's causes of action pursuant to Code of Civil Procedure, section 425.16 (the anti-SLAPP statute). He also challenges the denial of his request for attorney fees. We affirm.

## BACKGROUND

**A.    Complaint**

The following relevant allegations appear in Bagish's complaint. Sarraf lived across the street from Bagish and parked his vehicles near the seven-foot hedge growing in Bagish's front yard. In early April 2024, Sarraf cut down the hedge without Bagish's consent.

On April 25, 2024, Sarraf falsely reported to law enforcement and neighbors that Bagish chased him, and while standing inches away said, "'I'm going to slash you.'" Sheriff's deputies arrested Bagish and handcuffed him in front of his home. However, no criminal complaint was ever filed.

Bagish asserted causes of action for slander per se, conversion, trespass to chattel, intentional inflection of emotional distress (IIED), negligent infliction of emotional distress (NIED), and injunctive relief. In the slander count, he alleged Sarraf made defamatory statements by reporting the alleged slashing

2

threat to police and neighbors.[1]  In the IIED and NIED counts, he alleged that Sarraf's defamatory statements caused him emotional distress.

## B.     Anti-SLAPP Motion

### 1.     *Sarraf's Motion*

Sarraf filed an anti-SLAPP motion directed to the causes of action for slander, IIED, NIED, and injunctive relief.  He argued these counts arose from protected conduct and, relevant to this appeal, were barred by the litigation privilege (Civ. Code § 47, subd. (b)[2]).

In his declaration, Sarraf described the parties' acrimonious relationship.  During an incident nine days before the arrest, Bagish allegedly yelled racist statements, threatened

---

[1]     Evidence in the record indicates that Sarraf reported two discrete acts of wrongdoing to law enforcement:  (1) Bagish threw a rock that shattered the windshield of Sarraf's truck and (2) made the "slashing" threat.  Bagish was arrested on suspicion of both making a criminal threat and vandalism.  His complaint, however, does not allege that the report of *vandalism* was defamatory.  The "'issues [to be determined] in an anti-SLAPP motion are framed by the pleadings,'" and "we will not 'insert into a pleading claims for relief based on allegations of activities that plaintiffs simply have not identified . . . .'" (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 883, italics omitted.)  Thus, we restrict our analysis to the falsity of the slashing threat.  We disregard Sarraf's arguments suggesting that Bagish's evidentiary burden required him to address vandalism of the truck.  Though our recitation of the evidence includes the parties' contentions about damage to Sarraf's truck, we include the information only as background for the alleged slashing threat.

[2]     Undesignated statutory references are to the Civil Code, and undesignated references to rules are to the California Rules of Court.

3

to sue him, and said Sarraf "'will suffer the consequences'" if he did not move his car.

Sarraf also described the events of April 25, 2024. In the morning, he saw Bagish throw a rock at his truck, shattering the windshield. While Sarraf photographed the damage, Bagish rushed outside with his phone and demanded Sarraf turn around so Bagish could take his picture. Sarraf entered another vehicle and locked the doors. Bagish followed him, tried to open the door, and pressed his phone against the windshield. Sarraf drove to the sheriff's station and made a report.

In the afternoon, Bagish followed Sarraf closely as he was walking. With his face inches from Sarraf's, Bagish "repeat[ed] the same threats he had made previously."[3] Sarraf called 911 and reported the incident. He was interviewed by the responding deputies. Sarraf attached a copy of the sheriff's incident report to his declaration as an exhibit.

### 2. *Bagish's Opposition*

Bagish opposed the motion and provided the following information in his declaration. He described himself as a 68-year-old retiree who was "largely chair-bound" due to degenerative spine disease. He had lived in his home for 37 years and got along with his neighbors. He had never previously been arrested or accused of a crime.

The parties had a history of disputes concerning parking. Before the day of his arrest, Sarraf damaged Bagish's hedge.

Bagish denied throwing a rock at Sarraf's truck. He saw the damage on the morning of April 25 and reported it to sheriffs.

---

[3]   Sarraf's declaration contains no mention of a threat by Bagish to "slash" him.

4

In the afternoon, he approached Sarraf near the truck, recording the interaction on his phone, and told him the sheriffs already had been called. Sarraf walked away. Bagish asked him to turn around because Bagish wanted to record himself telling Sarraf that he was going to sue him for vandalizing his hedge. Sarraf crossed the street and entered a different truck. Bagish denied "'chas[ing]'" Sarraf but described approaching the truck on the driver's side, then from the front, to continue recording. Sarraf drove away.

In the early evening, Bagish saw Sarraf walking on the street and approached him "slowly" due to his "bad back." He caught up when Sarraf paused to talk with a neighbor. Bagish accused Sarraf of causing $8,300 of damages to the hedge. He denied saying "'I'm going to slash you!'" Sarraf called 911, and Bagish tried to tell the operator Sarraf was lying. Bagish walked away, and from a distance of about 30 feet, heard Sarraf call him a coward.

Deputies arrived, arrested Bagish, and drove him away to spend the evening in custody. In his pocket was a boxcutter he used to open boxes delivered by UPS earlier in the day.

When Bagish appeared for his arraignment in mid-May, he learned a criminal complaint had not been filed, and he later learned from the district attorney's office that no charges would be brought.

Bagish argued the challenged counts did not arise from protected conduct. He argued the litigation privilege did not bar his claims because Civil Code section 47, subdivision (b)(5) (section 47(b)(5)) provided an exception for false reports to law enforcement that are made with knowledge of the report's falsity or with reckless disregard for its truth or falsity.

5

### 3. *Sarraf's Reply*

Sarraf filed no evidentiary objections. In his reply, he denied that section 47(b)(5) excluded his reports to law enforcement from the anti-SLAPP statute's protection, but he did not mention the exception in his discussion of the litigation privilege. At the hearing, Sarraf's counsel argued section 47(b)(5) required proof of actual malice through evidence, and Bagish's merely asserting "I didn't do it" was insufficient.

### 4. *Trial Court's Ruling*

The trial court found Sarraf's statements to neighbors were not protected activity. However, it found his report to law enforcement was protected activity, and the four challenged counts arose from this activity. The court found Bagish's slander and IIED claims had minimal merit, but the claims for NIED and injunctive relief did not. Relevant to this appeal, the court found that Bagish's evidence, taken as true, established the section 47(b)(5) exception to the litigation privilege applied. The anti-SLAPP motion was granted as to the NIED and injunctive relief counts but denied as to slander and IIED. The court denied Sarraf's request for attorney fees.

Sarraf appealed from this order.

## DISCUSSION

### A. The Anti-SLAPP Statute

Code of Civil Procedure section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be

6

subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Reports of suspected criminal activity to law enforcement have been held to be acts "'in furtherance of a person's right of petition or free speech.'" (*Id.*, subd. (e)(1), (2); see, e.g., *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1569–1570.)

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.) "If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Ibid.*) We review de novo the grant or denial of an anti-SLAPP motion. (*Id.* at p. 1067.)

## B.     The Settled Statement Limits the Issues on Appeal

In this appeal, Sarraf designated a settled statement in lieu of a reporter's transcript. By doing so, he has narrowed the issues we may consider in this appeal.

The absence of a reporter's transcript of the hearing on an anti-SLAPP motion does not necessarily render the appellate record inadequate. (*Chodos v. Cole* (2012) 210 Cal.App.4th 692, 700.) However, if "an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court," the record must include a reporter's transcript or a settled statement under Rule 8.137. (Rule 8.120(b).) Here, Sarraf elected to make the hearing proceedings part of the record by way of a settled statement.

A settled statement "must" contain "a statement of the points the appellant is raising on appeal." (Rule 8.137(d)(1).) "Stating the points to be raised on appeal enables the respondent to determine whether additional portions of the oral proceedings should be included in the settled statement." (*Von Nothdurft v. Steck* (2014) 227 Cal.App.4th 524, 534 (*Von Nothdurft*).) "Failure to include issues in the settled statement precludes the appellant from raising them on appeal." (*Ibid.*) Thus, to the extent that Sarraf has not identified issues in the settled statement, they are forfeited.

**C.    Analysis**

1.    *Sarraf's Step One Burden Required Him to Identify the Allegations Arising from Protected Activity*

Sarraf argues the trial court erred by failing to follow the anti-SLAPP procedure prescribed by *Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*). Sarraf argues *Baral* required the court to review each allegation in each cause of action subject to the anti-SLAPP motion, essentially on a line-by-line basis, in the first step of its analysis. He argues the court should have parsed out whether each specific allegation arose from protected or non-protected activity. Then, in step two of its analysis, the court would have been better able to analyze whether the protected allegations had minimal merit. According to Sarraf, the court's failure to use this procedure to parse out protected allegations from non-protected allegations somehow infected its second step analysis. We disagree.

Though it was Sarraf's burden to establish which allegations arose from protected activity, he did not identify particular sentences or allegations to be stricken below, instead

8

asking the trial court to strike whole "causes of action." While a court may strike less than the entirety of a cause of action, it is not required to identify the allegations susceptible to a special motion to strike. (*Park v. Nazari* (2023) 93 Cal.App.5th 1099, 1108.) "If a defendant wants the trial court to take a surgical approach, . . . the defendant must propose where to make the incisions." (*Id.* at p. 1109.) In the initial motion, the defendant must identify "each numbered paragraph or sentence in the complaint" that it wants the court to analyze. (*Ibid.*) Sarraf did not do this.

Moreover, the trial court sufficiently distinguished between protected and unprotected allegations. The court found Sarraf's statements to neighbors were not protected activity. It found his report to law enforcement was protected activity, and it went on to analyze whether the slander and IIED claims based upon the report had minimal merit. Sarraf does not specify or persuasively explain why the way in which the court conducted its step one analysis rendered its second step analysis invalid. [4]

### 2. *Step Two – Minimal Merit*

Turning to the second step of the anti-SLAPP analysis, "for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' [Citation.]" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.) "If the plaintiff cannot make this showing, the court will strike the claim." (*Ibid.*) "In this summary-judgment-like process, courts do not weigh evidence or resolve conflicting factual claims.

---

[4] This claim of error also was not disclosed in the settled statement and is therefore forfeited. (*Von Nothdurft, supra*, 227 Cal.App.4th at p. 534.)

9

Instead they evaluate whether plaintiffs . . . have stated legally sufficient claims and whether these plaintiffs have made a prima facie evidentiary showing sufficient to sustain a favorable judgment. Courts are required to accept the plaintiff's evidence as true. The task is to evaluate the defendant's showing only to determine if it defeats the plaintiff's claims as a matter of law. If the lawsuit has even minimal merit, the motion fails and the suit proceeds." (*Collins v. Waters* (2023) 92 Cal.App.5th 70, 80 (*Collins*); *Sweetwater Union High School Dist. V. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.)

On appeal, Sarraf does not challenge Bagish's showing as to the elements of slander and IIED. He focuses solely on the litigation privilege defense and the exception to it set forth in section 47(b)(5).

When it applies, the litigation privilege, section 47(b), "is an absolute privilege and bars all tort causes of action except a claim of malicious prosecution." (*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1031.) However, in 2020, the Legislature enacted section 47(b)(5), which provides the privilege does not apply to "any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report."

Sarraf argues that section 47(b)(5) incorporates a standard that requires proof of "actual malice" by clear and convincing evidence. He asserts certain evidence is "required" to prove

10

actual malice[5] and certain evidence "cannot" satisfy the burden of the party invoking the exception.[6]  Bagish's evidence, he argues, is insufficient because he merely denied Sarraf's account—he did not produce corroborating documents, percipient and expert declarations, an explanation of how the windshield was damaged, or medical records.  Further, Sarraf argues his own submission "demonstrate[d] the opposite of reckless disregard."

As a preliminary matter, Sarraf failed to properly raise these arguments in the trial court.  In his reply brief below, he argued that section 47(b)(5) required a showing of actual malice but did not mention a clear and convincing evidence standard.  He did not support his arguments with legal authority[7] or analysis.  He made no evidentiary objections and did not discuss infirmities in Bagish's showing, other than to say Bagish's denial was not enough.  Sarraf "cannot attempt to breathe life into [these arguments] for the first time in this appeal." (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 436 [anti-SLAPP movant forfeited argument that plaintiff failed to provide evidence of malice where movant's "reply brief made no

---

[5]　"Required evidence" supposedly includes:  "[d]irect testimony about defendant's knowledge or belief;" "[c]ontemporaneous documents revealing doubt;" "[e]xpert testimony on reporting standards;" and "[c]ircumstances demonstrating obvious fabrication."

[6]　Such evidence supposedly includes "[s]elf-serving denials of underlying conduct" and "[c]ircumstantial inferences from disputed facts."

[7]　The only cases Sarraf cited in his reply below to support his actual malice arguments were orders from judges in two unrelated superior court cases, neither of which mentioned "actual malice."  Trial court rulings are not precedent. (*B.F. v. Superior Court* (2012) 207 Cal.App.4th 621, 627, fn. 2.)

intelligible malice argument, lacking any authority, evidence, or analysis"].)

If we nevertheless consider Sarraf's arguments on their merits, we conclude they fail. Sarraf does not provide authority to show that Bagish must prove malice by clear and convincing evidence to establish the section 47(b)(5) exception to the litigation privilege.[8] Even if we assume this standard of proof applies at trial, Sarraf does not convince us that such proof is required to defeat an anti-SLAPP motion.

*Collins, supra*, 92 Cal.App.4th 70 is instructive. In *Collins*, a political candidate accused her opponent of a dishonorable military discharge, and she persisted even after the opponent published evidence of an honorable discharge. (*Id.* at p. 73.) The opponent sued for defamation. The trial court granted the candidate's anti-SLAPP motion, finding the opponent failed to "meet his burden of proving actual malice by clear and convincing evidence." (*Id.* at p. 78.)

Division Eight of this court reversed. (*Collins, supra*, 92 Cal.App.4th at p. 77.) The plaintiff was a public figure, and as such, was required to prove actual malice by clear and convincing evidence as an element of his defamation claim. (*Id.* at p. 79.) This degree of proof was not required, however, to defeat an anti-SLAPP motion. (*Id.* at p. 80.) Instead, public figure plaintiffs meet their minimal burden by establishing "a *reasonable probability they can produce clear and convincing evidence*

---

[8]    Sarraf argues that public policy and constitutional considerations generally support adjudicating disputed factual issues in an anti-SLAPP proceeding. He relies on cases that did not involve California's anti-SLAPP statute, the litigation privilege, or section 47(b)(5).

12

showing that the statements were made with actual malice." (*Ibid.,* italics added.) The plaintiff's evidence of an honorable discharge included what purported to be an official document which, "if authentic, completely pierced through to absolute truth . . . ." (*Id.* at p. 84.) Or, it could turn out to be a "total fake." (*Id.* at p. 85.) "At this early stage of the case and without weighing the conflicting evidence, [the opponent] established the prima facie case necessary to show his case has at least minimal merit." (*Id.* at p. 84.)

This case differs from *Collins* in that Sarraf contends that Bagish must prove actual malice to overcome a litigation privilege defense, rather than to establish an element of a defamation claim. It also differs in that Sarraf does not contend Bagish is a public figure. Nevertheless, even if we assume Bagish has to prove actual malice *at trial* by clear and convincing evidence to establish the section 47(b)(5) exception, he does not need to do so to carry his step two burden.

 Bagish denied chasing Sarraf and provided facts about his age and limited mobility suggesting that any pursuit at speed would have been unlikely. He denied threatening to slash Sarraf and indicated he was in possession of a boxcutter because he had used it to cut open boxes that had been delivered that day.[9] We accept this evidence as true and "draw 'every legitimate favorable inference'" from it. (*Cuevas-Martinez v. Sun Salt Sand, Inc.* (2019) 35 Cal.App.5th 1109, 1117, citation omitted.) We cannot, as Sarraf would have us do, disregard our Supreme Court's

---

[9]     Though we do not consider Sarraf's evidence except to determine if it defeats Bagish's showing as a matter of law, we note Sarraf avoids stating under penalty of perjury that Bagish made a threat to "'slash'" him.

13

longstanding prohibition on resolving factual claims, weighing credibility, and comparing the weight of the evidence in the second step of the anti-SLAPP analysis. (*Baral, supra*, 1 Cal.5th at p. 384–385; *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) Bagish has sufficiently shown a reasonable probability he will be able to produce clear and convincing evidence that Sarraf made a knowingly false report and therefore overcome a litigation privilege defense. The trial court did not err in denying the motion as to the slander and IIED claims.

**D. Attorney Fee Award**

Sarraf also challenges the trial court's denial of his request for attorney fees.

With exceptions not at issue here, "a prevailing defendant on a special [anti-SLAPP] motion to strike shall be entitled to recover that defendant's attorney's fees and costs." (Code Civ. Proc., § 425.16, subd. (c)(1).) "[A] party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion." (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 340.) "This analysis includes factors such as the extent to which the defendant's litigation posture was advanced by the motion, whether the same factual allegations remain to be litigated, whether discovery and motion practice have been narrowed, and the extent to which future litigation expenses and strategy were impacted by the motion." (*Id*. at p. 345.) We review a trial court's determination of whether a party prevailed on an anti-SLAPP motion for abuse of discretion. (*Id*. at p. 340.) A trial court abuses its discretion when it exceeds the bounds of

14

reason.  (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 450.)

The trial court found that the NIED count could have been eliminated by a demurrer, as Bagish failed to allege facts establishing a duty of care, and the same discovery would still be required to litigate the surviving IIED claim.  Dismissal of the cause of action for injunctive relief did not change the scope of discovery because the surviving slander count still called for injunctive relief.  Because the issues had "only been marginally narrowed by the present motion, and the same expense and discovery will likely result as if the motion had not been brought," the court found the results of the motion were insignificant and denied fees.  We agree.

Sarraf fails to explain how factual issues were narrowed, and it is not clear how they would be.  What Bagish said to Sarraf, what Sarraf told law enforcement, and Bagish's damages remain at issue and will likely be probed in discovery.

He also fails to persuade us an anti-SLAPP motion was necessary to attain dismissal of the NIED and injunctive relief claims.  An NIED claim—like Bagish's—that does not allege facts supporting a duty, is subject to a demurrer.  (See *Sullivan v. City of Sacramento* (1987) 190 Cal.App.3d 1070, 1074–1075.)  As the trial court recognized, "[i]njunctive relief is a remedy, not a cause of action."  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 65.)  Sarraf fails to show that, by eliminating the standalone *cause of action* for injunctive relief, he also eliminated the *remedy,* should Bagish prevail on the slander claim that remains to be determined.

Finally, Sarraf argues elimination of the NIED claim "[r]educed [his] potential damages exposure by more than 33%."

15

He forfeits this assertion, however, by failing to support it with cogent argument, legal analysis, and citation to the record. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146.)

His argument is also unpersuasive. Dismissal of the NIED claim merely eliminated one legal avenue for obtaining emotional distress damages. Sarraf does not identify damages that would be recoverable on the NIED claim but not on the IIED claim. He also overlooks that the surviving IIED claim includes a request for a punitive damages award.

The trial court did not exceed the bounds of reason in finding Sarraf attained no practical benefit from the partial grant of the motion. Accordingly, it did not abuse its discretion in finding he was not a prevailing party entitled to attorney fees.

## DISPOSITION

The trial court's order is affirmed. Bagish shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MORI, J.

We concur:

ZUKIN, P. J.

TAMZARIAN, J.

16